I see Ms. Copeland is here for Anderson. Ms. Greenwood is here for the government. Ms. Copeland, are you ready to proceed? Good morning and may it please the court. My name is Amy Lee Copeland. I represent the appellant Brian Anderson in this case. Today I'd like to focus on what I think are my two strongest and best issues and that is the interference by the district court into the right to testify or not to testify by my client, Mr. Anderson, as well as the denial of defendant's request to charge number 11, which goes to the CDSOA, the Byzantine and unusual federal scheme underlying this entire prosecution. Immediately after the defense case, I stood up. I was also trial counsel and told the district court that I had rested the case. This colloquy then ensued. Mr. Anderson, you've heard your counsel announce that you have no more evidence to present in this case. Do you understand that you have an absolute right to testify if you wish to testify? The defendant replies, yes, sir. Well, is it your independent decision not to testify in this case? Mr. Anderson says, may I talk to my lawyer? The court says, yes, sir. I say, Your Honor, may we step outside, please? Well, yes, ma'am. There's a pause. I come back. I tell the court that I think it's fair to say that Mr. Anderson isn't certain whether he wishes to testify. The district court says he's got to be certain. It's 4 o'clock. We're going to do it. So, my client interrupts and says, let's do this. Let's testify. And this is the first argument on my appeal, whether this unduly interfered with the attorney-client relationship. I'm not aware of a constitutional right about attorney-client relationship. It's either, did it interfere with his right to testify? No, he testified. Or did it render you ineffective as counsel? Which prong are you operating on? Your Honor, I believe that there is actually a third option that interfered with the attorney-client relationship in giving that advice. Teague discusses this in footnote 8. Vanda Walker talks about it. Lee talks about it. And Watts discusses it. What do you think? So, I'm trying to understand practically. Teague says that a client has the right, the right to testify. Correct. And there's a real problem if the attorney, if the attorney doesn't go over that with him. If there's silence on the attorney's part and the client never knows this right, real problem on a 2255. It sounds like when it was a good thing the judge asked the question because it sounded like maybe you hadn't even talked about that with your client. Your Honor, that is not correct. I had represented Mr. Anderson since before the indictment was returned. And for 10 months, we had discussed this. His desire was to go to trial and his desire was never to testify. The jury and charges were. So, how did the judge, by simply reconfirming that and asking the question, how did that interfere with your relationship with your client? Your Honor, as Teague, Vanda Walker, Lee and Watts discuss, the fact of even an inquiry about the right to testify suggests a certain insufficiency of the defense. In the context of this case, I had just lost an evidentiary ruling in the defense case. And my client was very angry about that. And as much as you tell your client that part of being an attorney is losing objections and giving them a litigation trope that you're flying the plane and get shot up and you're still going to land it at trial, the fact that the judge had gotten angry with me about an evidentiary issue that I pressed. But, okay, so there was a new development. Was it not a good thing, a prudent thing for you to have one last opportunity to talk with your client to make sure, decision time, that's still what you want to do? It seems to me this is good trial practice to make sure that the client understands his rights. Your Honor, when you look at the Eleventh Circuit cases, the Teague, the Vanda Walker. I know that there's the one dictum in Teague that says you don't have to get into, you don't have to go through a waiver and all that. But the other cases I read them say you're not required, a judge is not required to go through this drill. I don't see any authority on our part that says it's reversible if a judge does simply say, you know, you have the right to testify or not. What do you want to do? Your Honor, Lee especially, and I realize that that came in the context of a pro se litigant. But one of the solutions proffered by the government in Lee was that there was no duty to correct, for instance, a pro se litigant's misunderstanding of the right to testify. And the court goes on to say, in cases where the defendant has an attorney, a district court's colloquy with the defendant would be inappropriate because it would intrude on the legally sacred attorney-client relationship. And the Lee court goes on to say, and that's at page 3. But I'm just a practical, I'm a practical person. So the judge doesn't say anything here at all. And it turns out your client did want to testify. And you didn't have that one last conversation with him. You'd had them before, but you had the bad evidentiary ruling. He wants to testify. We'd never know and wouldn't we a few months down the road be facing the 2255 when he says, you know, I really wanted to testify and she didn't ask me at the last minute? Your Honor, if I, down the road, had faced a 2255 on that issue, it would be more like the situation in Teague in the in-bank court where there's an actual evidentiary hearing. I understand notions of judicial economy, but I can get into, at a 2255 hearing, the steps that I did take to talk to my client about that. But the judge doesn't know you took any steps at all. Judge also knows that my client's sitting there and I'm saying that I'm wresting the defense that my client doesn't want to testify and he doesn't see Mr. Anderson signaling for help or pulling on my jacket to correct the misunderstanding. We're also, that gets us into the plain error standard. You never objected. You never alerted the judge to the fact, you know, this is a problem, Judge. Could you tell him that it's, you know, not that you're suggesting to him he testify? And I'm assuming most district judges, I know this is routine. Most district judges always, right before, make sure the defendant knows his right. And I'm assuming practicing in Savannah, you knew that that was Judge Moore's routine. And knowing that's what he always did and having this concern in this case about interference with rights, should you not have at least alerted the judge beforehand that you were going to object if he did that? Your Honor, I have three responses to that question. First of all, in Vandewalker, Lee and Watts, the issue wasn't preserved and the court reviewed it de novo. Second, I worked for a judge who was very practical and he told me never to precipitate the command, especially with judges. And while I understand that Judge Moore often has this colloquy, I did not know that we would have this colloquy for certain until we were in the middle of it. Why didn't you anticipate that? Most district judges have this colloquy. Why didn't you anticipate it and head it off if you thought it was a problem? Your Honor, I didn't know what good it would do. The judge does go into this colloquy and if the purpose of the contemporaneous objection of rule is to allow a judge to fix the error, how do you put that toothpaste back in the tube after the judge tells your client he can testify? Or he gives him this right and the client is genuinely uncertain, wants to consult with me because there was a consultation. And the client makes kind of a . . . what Penny Cook talks about is . . . But you're saying that because the judge asked, this last minute, gave your client this last minute chance, because he asked, then you and he talk and he decided to testify. And I gather you disagree with that decision? Your Honor, he has the right to do this. But all of the cases, and especially Penny Cook, and I get that that's out of circuit precedent and it isn't by . . . But I'm just asking, in this case, how does this hurt anything that he testified as . . . let's get on to the evidence. Best I can see, the government had overwhelming evidence that all these transactions he described were totally made up. Nothing. Twenty-four million. Nothing there. I don't see any evidence in the record, and you know it better than I do, that suggests anything to suggest these transactions really occurred. When he testifies, he provides the only basis for the jury to think maybe they did. And it sounds like the jury, he had some folks ready to acquit kind of quickly, so maybe he did okay on that. What harm was suffered by the fact that your client testified? Your Honor, there was evidence in the record, independent of his testimony, that supported our theory of defense. Number one, there were 2005 and 2006 tax returns that showed cost of goods sold. That there was no other cost of goods sold anywhere on other tax returns which supported a defense that these had been purchased and resold shrimp. Number two, you had testimony from other shrimpers, notably Pat Matthews and Frank Deverly, that the law had changed and that their submissions to the Customs and Bureau of Protection unit that handled this had gone up dramatically from $43,000 to several million dollars. There was also the fact— I see you had some evidence. You're saying he hurt himself with his testimony? Your Honor, he did. You can only read the government's brief and determine that. There are six pages or so devoted to the effect of his testimony. There's also the Brown case and the Margarita Garcia case that talk about how the defendant's testimony can really move the mark that this could lead a jury to convict simply based on a disbelief of his testimony. The other issue that I'd like to touch on very quickly is— Before we leave that, do we don't know from this record whether or not you advised your counsel not to testify before the court addressed him? We don't know from the record whether or not that took place? That is correct, Your Honor, and that is why this is better handled as a 2255 motion because I am not at liberty to disclose confidential communications. When a client files an ineffective assistance petition, as you know, they can't use it as both a sword and shield. I could then come forward and make a record of exactly the conversations that we had. But we do know from the record that the defense arrested before the court addressed Mr. Anderson? That is correct, Your Honor. Without him testifying? That is correct. Okay. Thank you. Are you saying then that really you shouldn't be appealing on this ground? We should wait for him to file a 2255? Your Honor, I am not saying that. I'm saying that this ground has presented itself that there are three cases that have presented a de novo standard of review of this ground that part of a 2255, if I procedurally defaulted this claim, that would also inure to my client's detriment. So even if he chooses to raise this as a 2255 claim, which I don't think he can because he testified, I felt that it was incumbent upon me to raise it at this moment. You know, counsel will often say at this point, at least for the record, Your Honor, I've advised my client against testifying. He has chosen. It's his right. That's the way the drill usually goes. You didn't say that on the record. I didn't, Your Honor. I didn't. As far as we know, you may have said, okay, it's up to you. Jump ball. You decide. We don't know what you said, right? And I don't think I'm at liberty to tell you what I discussed with my client in the ante room. All right. Thank you. Good morning. I'm Nancy Greenwood. I'm an assistant United States attorney out of the Southern District of Georgia. May it please the Court, as this Court has pointed out, there are no courts that prohibit trial courts from advising a defendant that he has a right to make the decision of whether or not to testify. And in this case, that's what the Court did. The Court did it not in the ways that are warned about in Teague and Penny Cook and so forth. He did not put a thumb on the scale when he asked the question. He simply was making a record, which there is nothing inappropriate about it. There were opportunities for defense counsel to raise an objection and to make sure that there was a clarifying statement from the Court that he was not intending to suggest anything one way or another. That would be a mighty awkward objection, wouldn't it? Your Honor. I object to what, you know, normally you object to something the government's lawyer does, but you're objecting to the judge addressing your client. That would be a mighty awkward objection, wouldn't it? Well, I understand that it could appear that way. However, many times in trials, there are moments where a counsel might stand up and just ask for sidebar. They don't even have to use the word objection. They can say sidebar, Your Honor, and then they can approach the bench. They can explain what their concern is, and then when the judge asks the question or whatever, they can clarify it. There was another moment, too. The judge gave the parties an opportunity or the defense attorney and Anderson an opportunity to go outside and speak. At that point, Ms. Copeland certainly could have talked to her client and said, listen, you know, I don't think it was really appropriate for the judge to ask that question. You and I have had this conversation a number of times over the past 10 months. So then you're in a, you know, and then the defendant is faced with a position where he's caught in the middle between the judge and his lawyer. That's an even more awkward position, isn't it? I don't know that that's true, and I think one of the things we need to remember is in the context of a trial, there are a lot of decisions that the defense attorney gets to make, a lot of them, decisions about objections, decisions about motions to make, decisions about questions to ask defendants, but this is one particular right. It's a fundamental right. Rock v. Arkansas, the Supreme Court said, this is the decision that the defendant gets to make, and there's nothing wrong with a court clarifying on the record that the decision has been made by the defendant, and that's all this court did. There was no thumb on the scale in the process. What if Ms. Copeland had previously advised her counsel not to take the stand and testify, and then the colloquy that the judge has with her client convinces the defendant that, well, maybe my defense is insufficient, maybe my attorney hasn't provided the representation that I need in order to take this case to the jury. Wouldn't that, I mean, that wouldn't constitute an interference with the attorney-client relationship? So that could certainly happen in some cases. However, that was not the circumstance, the facts of this record, there is no indication that this judge was suggesting one way or the other whether or not the defendant should or shouldn't testify. He simply said, I want to make sure you understand this is your decision. You get to make the decision. This is your personal right, and is that the decision that you've made? And he said, I'd like to talk to my lawyer, and then the judge gave him an opportunity to do that. That is far from interfering. That's normally the situation we see here in our precedent, but what's different about this case is after the colloquy with the judge, the defendant says, uh-oh, I changed my mind. I changed my mind now as a result of the questions that the judge has asked me. Doesn't that make this case different than our precedent? He didn't say he changed his mind. When the judge asked him a question, he said, may I speak to my lawyer? And the judge said, sure, you can speak to your lawyer, and his lawyer asked, could we step outside? And they did step outside, and they had an opportunity to speak, and I do want to correct the wording. The defense had already arrested, though, right? The defense had arrested. Yes, Your Honor, but the judge had explained in his preliminary instruction that there parties. And this is very common in trials where the court resolves a number of different things and then takes up, I mean, evidence is reopened on a regular basis in trials based on various different reasons, and this is no different. I think what's important, and one clarification I want to make is that in Anderson's reply brief, you know, it's indicated that when they came back in to say that there was still an uncertainty about whether or not Anderson wanted to testify, they said that he needed more time. And in reality, that's not what the record said. There was no request for more time. That is another option that could have been requested in that moment, is we need more time to talk about it, and that wasn't asked for. Instead, it was simply, he's still on the circuit. What if he'd already made up his mind, I'm not going to testify, and then the court engages in this? And then he could have said that to the court. And there wasn't anything suggestive. So he could not, as a result of the colloquy, come to the conclusion that my defense is insufficient, so I need to change my mind based on the questions that the court is asking me. Maybe my lawyer hadn't done a good enough job, so I need to get on the witness stand? Not based on this record, Your Honor. It is simply, I want to make you aware that this is your personal right. After two days of trial where all the decisions got to be made by the defense attorney, we the defendant sit, and don't have the option to instruct their attorney on exactly how this case is going to go forward. So at the conclusion of that, as things are wrapping up, the court is simply making sure that the defendant understands that this is his personal right. It's really no different than when a defendant and a defense attorney decide that they're going to waive the jury trial, because sometimes that happens and they opt for a bench trial. The defendant was probably involved in those communications, but nevertheless, when that announcement is made, the judge takes the step of verifying that this is the choice of the defendant, because that's his personal right. There are certain rights that the defendant has that are personal to him that a defense attorney cannot waive on his behalf. Are there limits to a court's ability to inquire into the defendant's right to testify? Are there any limits on that? I think there can be limits, and I think there are certain records. For instance, there's a Ninth Circuit case where the court, there was an issue of whether or not the defendant was going to testify. This is U.S. v. Jolson, Ninth Circuit in 1993. In that case, the defendant kept saying, I want to testify, I want to testify, but the  the court actually, in that particular case, the court wound up not making an inquiry, and the Ninth Circuit said it was okay, but during that exchange with defense counsel and with the defendant, the court actually made comments like, you need to listen to your attorney's advice, and so forth. Even that wasn't considered, it was troubling. The Ninth Circuit found it troubling, but did not find that that was error. In this situation, there's a Sixth Circuit case, Weber, from 2000, where the court actually went so far as to explain that if the defendant took the stand, chose to testify, and was convicted, that the court could consider his testimony and the fact that it was disbelieved in deciding whether or not to apply a sentencing enhancement, and in that case, that wasn't considered crossing the line and interfering with the right to testify. So I think that in this case, very innocuous, I just want to make sure that you understand, Mr. Anderson, that this is your personal right. It's a fundamental right, and I'm just confirming that you've made this decision. And so he could have said, yes, I've made this decision, no question, but as has been pointed out, things change during a trial, and that decision may have been made at one point. But as Ms. Copeland pointed out, there was an objection that she had just lost. And so he may have decided, I want to change my position on that, but I at least want to talk to my lawyer about it. And so they went out in the hall, and they spoke about it, and he still wasn't sure. And so they came back in, and the court understandably said, well, we need to know one way or the other. It's 4 o'clock, and the day still has time left in it, and there isn't anything improper about that. There was an objection. If it was improper, the defense attorney, it's her obligation to raise that objection, to give the court an opportunity to clarify the instruction. Well, let me ask you this. When they went out in the hall, if Ms. Copeland had advised Mr. Anderson, I'm advising you not to testify, not to get on the witness stand and testify, for a number of reasons. One reason would be that it would interfere with your ability to raise a sufficiency of the evidence argument on appeal. And he said, based on the questions that the court asked me, I'm going to reject your advice and testify because my defense may be insufficient, based on the questions that the court asked me. That's just right. If that was the case, would that be an interference with the attorney-client relationship? No, Your Honor. The attorney and client were speaking to each other and making this decision. Just because there's a disagreement between the attorney and the client, that's not interference with that relationship. Now, I would also point out that although Ms. Copeland has pointed out the Brown case, in Ewen's versus McCarrick, which is a 2002 published case from this circuit, it stated that the government cannot rely solely on a defendant's testimony and the jury's disbelief of that testimony to prove its case. And so it's important to note that the government was not relying solely on the defendant's testimony. In fact, the defendant's testimony really wasn't that bad. I mean, it just didn't comport, it didn't make sense. So back to my hypothetical, if he decided to follow his lawyer's advice before the colloquy, but reject his lawyer's advice after the colloquy, that wouldn't be an interference with the attorney-client relationship? No, Your Honor. The attorney and the client were able to have conversations about this. There was no interference with their relationship. The fact that the defendant decided— Even though he says, I accepted your advice before, I'm rejecting your advice now after, as a result of the questions of the judge? Your Honor, the question of the judge was simply, this is your choice. And then he exercises his right. Now, there are lots of decisions and lots of things that happened in the trial between whatever conversations he and his lawyer had about whether or not he was going to testify. And things change, and this defendant has every right to change his mind without it being considered some sort of violation of an attorney-client relationship. I would also like to point out, because I anticipate in rebuttal that Anderson is going to bring up, Ms. Copeland is going to bring up this supplemental jury instruction. I would point out that, number one, I think the judge is in the best position to weigh the relevance of that jury instruction. And I think in this particular case, all of the information that was contained in that particular proposed instruction was elicited through witness testimony. In fact, the very first witness, Sean Wittrich, testified specifically about the issue that was of some level of concern or justified this good-faith exception, or good-faith defense, which was that the shrimper can claim the expenses related to catching the shrimp through the CDSOA, just as the shrimp processor can claim the expenses related to processing those very same shrimp. That's essentially what the issue was. And Sean Wittrich confirmed that that was possible. That's in the transcript at page 84 of the trial transcript. But here's the thing. All this jury instruction said was, this is what shrimpers can claim. This is what shrimp processors can claim. But Anderson was not a—he was a shrimper, and the government didn't challenge what he could claim as a shrimper. He was not a shrimp processor. So whether or not shrimp processors can claim the shrimp they buy as raw material is immaterial. He was a broker of shrimp, and this jury instruction did nothing to inform the jury of what brokers of shrimp—somebody who middles deals, somebody who is just a middleman from the seller to And so—and the judge is really in the best position to evaluate that. And in this case, the court evaluated it, found that it was unnecessary, said that this information could be elicited from witnesses. It was elicited from witnesses. And it wasn't relevant. At very best, it was marginally relevant. At worst, it would have been highly confusing to give an instruction about shrimpers and Anderson wasn't a shrimp processor. And it was under this—what the government contends is a farce claim that he was buying and reselling shrimp in mass amounts—100,000 pounds of shrimp every two weeks—that justified these claims. And we have to remember the claims themselves included handwritten notes about over $5 million of manufacturing facility expenses and equipment expenses that just were completely fictitious. And that was the government's position. And we feel that the court did not abuse its discretion to properly instruct the jury or leave that particular instruction out, which was irrelevant. Thank you. Thank you, counsel. We'll hear from Ms. Copeland again. Thank you, Your Honor. It would have been a mighty awkward objection to try to tell the judge. You couldn't tell my client that. I'm not sure a contemporaneous objection— Awkward or not, aren't you expected to make an objection if you think it's important? Again, I get back to understanding the judge is probably going to do this. That's the drill for most district judges, that you could say ahead of time in a sidebar, Judge, I'd rather you not ask. Now, of course, this is going to alarm the judge greatly because now we may have a situation where the defendant has not been advised of his right or whatever. But at least, shouldn't you—you think there's something amiss in the way the judge said it or you want the judge to correct it. Whether that judge is mad at you—and I know it's the Southern District of Georgia—and whether or not that judge is mad at you, that's not the issue. The issue is if there's a problem, you bring it up with the judge when it can be corrected right then. And, Your Honor, the fact that the judge mad at me bothered me exactly zero. That's just part of being a lawyer. But, if I went to the sidebar, even you said, the judge would really put out his spidey senses on this. If I told the judge he's not going to testify, don't ask my client about that, I think that that would have actually made the judge double down on asking my client about this particular decision. You, yourself, have said, we're talking about this kind of invisible interference of the right to counsel, which I don't find in the Constitution. It's ineffective assistance of counsel. So, it's whether or not this question would have rendered you ineffective. And we keep forgetting this right that Teague recognizes, the right for the client, the defendant, to decide. And Teague says two ways you can mess up on that. If the client has told you, the lawyer, I want to testify, and you say, no, I'm not letting you, or, as what could happen more likely, you forget, it's a busy trial, you don't want him to testify, so you don't even bring it up, you don't tell the client it's his right. And Teague says, if the lawyer doesn't tell the client, and it turns out later, the client said, gee, I wish I'd known I would testify, that right's been violated. Aren't the client's rights here premier, and how does it hurt anything for a judge simply to say, end of the trial, I've got to ask you this, it's up to you, yes or no? How does a neutral question like that render you ineffective? Your Honor, this whole argument demonstrates to me why this is better handled as an ineffective assistance of counsel claim and not on direct appeal. I could tell you so much more if I were under oath and I had a client that was claiming that I was ineffective for not advising him of this. The judges, by this question, and in the heat of trial, and having lost an objection, which the client could import more significance to than anyone else does, the judge asks him this. And there's no way for me to make it . . . But doesn't he, I mean, just as we were saying, it's a fast-moving thing of trial, so you, we don't know, maybe you had a conversation with him two days ago, the day before, that morning, do you want to testify, whatever. But things had happened. You're sitting at the table, nobody's seeing you whispering to him. At that very last minute, the client has the right to know that he has the right to testify. And how can you ensure that happens unless there is some, even though our case law doesn't require the judge to do that? Because I can ensure that, Judge. It's on me. It is on me. And as I said, this is, I think, a much better ineffective assistance claim than it ever is an oral argument claim. There's so much I would like to tell you. But a contemporaneous objection couldn't give the district judge a chance to fix this. What if I had said, I object, you can't tell him this. Oh, I'm sorry, Mr. Anderson, I shouldn't have told you you had the right to testify. Where does this leave me? It makes, but when you go out in the hall with a client, okay, the judge hasn't said anything to suggest, gee, I think things have gone bad, maybe you want to testify. It's a very neutral question. You go out in the hall, I'm assuming you say whatever you can. I still think you shouldn't testify. He has whatever his reasons are. You may be repeating a conversation you've had before. You have the colloquy. And as it always is, whether the judge is interjected or not, he makes a decision whether or not to reject your advice, correct? Trials are rarely reasonable and calm. They're not reasonable and calm for attorneys. This is a stressful situation. I was standing outside talking to my client for a brief period of time. The government suggests that I could have asked for a sidebar on this, but then my client would have thought I was talking about him behind his back. The government notes that I didn't ask for any more time. I was getting there, but the judge tells me it's 4 o'clock, it's go time, you've got to make a decision right now. You know what, and again, I know it's not easy, but if you really felt your client needed more time, what you have to say, whether that judge is mad and it's 4 o'clock or not, what you have to say is, Judge, we simply have to have more time, please. And you'll get a few more minutes just with that. But when the judge says, you know, it's 4 o'clock, we're going to do it, that's when my client starts interjecting. Let's do this. Let's testify. And that's how it went down. Your Honor, I'm out of time. I can answer any questions about request for charge number 11, or you can just read my brief. I think we have your argument, Ms. Goldberg. Thank you, Your Honor. That's very good.